UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Tarsha J. Brown-Smith,

        Plaintiff,

  v.

Commissioner of Social Security,

        Defendant.

**Decision and Order**

18-CV-939 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 8, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 12, 19.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the Appeals Council's decision to disregard or to downplay evidence that she presented after the ALJ's decision. Plaintiff was *pro se* when she proceeded before the ALJ. The ALJ found myasthenia gravis and left eye cranial palsy as severe impairments but found that plaintiff was capable of light work with restrictions. [67.] After retaining counsel, plaintiff presented the Appeals Council with additional medical records that counsel was able to obtain for her, covering various treatment periods from 2013 to 2018. The Appeals Council rejected some of the evidence as duplicate copies of exhibits considered by the ALJ. [8.] Plaintiff concedes that at least some of her purportedly new evidence was duplicative. (Dkt. No. 12-1 at 12.) The Appeals Council rejected other portions of plaintiff's new submissions as either post-dating the ALJ's decision or as insufficient to change the outcome of the decision. [8.] This rejection is the heart of plaintiff's challenge. Plaintiff argues that her treating physician, Dr. Nyathappa Anand, completed a disability assessment on June 26, 2014 that contained important information about her limitations. Plaintiff argues further that her other new records put the ALJ's determination in question:

> There was additional evidence which post-dated the ALJ's decision, which the Appeals Council rejected as it did not relate to the period at issue. T. 2. Additional opinions submitted after the ALJ decision include another functional capacity exam performed by Ms. Stom, indicating that Plaintiff had substantial lifting, reaching, and fingering restrictions and would be unable to walk for thirty percent of the day; a statement from Dr. Elmer, an optometrist finding no limitations due to vision after having "improved through the years"; and a letter from Ms. Corsaro-Plune indicating that although Plaintiff had improved demonstrated the ability to function very well "until a life stressor interferes", could become tardy, disorganized, argumentative; and could need extra explanation. T. 21-24, 25-28, 15. Ms. Stom's primary diagnosis was Myasthenia Gravis, a condition which the ALJ had found a severe impairment. T. 21, 58. Ms. Corsaro-Plune had treated Plaintiff for depression during the relevant period; which the ALJ did acknowledge as a non-severe impairment. T. 981-1034, 59. As such, these records were both "certainly new" with good cause existing for not submitting them earlier; and related back to the relevant period. *Morales*, 2018 WL 679566 at *19; *Hightower*, 2013 WL 3784155 at *3. They are material because indicate a greater degree of impairment than the ALJ had found. *Wilbon*, 2016 WL 5402702 at *5. It is for the Commissioner to analyze the substance of these opinions. *Lesterhuis*, 805 F.3d at 88-89. Social workers are not "acceptable medical sources." *See* 20 C.F.R. § 416.913(d) (1); SSR 06-3p. However,

4

they are included among the "other sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. *See Id.* While an "other source" opinion is not treated with the same deference as a treating physician's opinion, the assessment is still entitled to some weight, especially when there is a treatment relationship with the claimant. *Pogozelski v. Barnhart*, 2004 WL 1146059, at *12 (E.D.N.Y. 2004).

(Dkt. No. 12-1 at 13–14; *see also* Dkt. No. 21 at 2.) The Commissioner responds that plaintiff's new evidence would not change the disability determination because the ALJ did review a considerable amount of information indicating that plaintiff's condition was stable:

> Despite the primacy of Dr. Anand's neurological treatment records to Plaintiff's claim of disability largely on the basis of myasthenia gravis, her brief is notably silent on them. *Id.* at 10-14. Significantly, his findings throughout the course of treatment do not support Plaintiff's claim of total disability. On the contrary, at regular neurological visits between September 2014 and August 2017, Plaintiff consistently denied significant symptoms of myasthenia gravis, neurological examination findings were normal, and Dr. Anand repeatedly remarked that she was doing well overall (Tr. 41, 177-82, 205, 208, 211, 214). Those treatment records are consistent with the progress notes of a second neurologist, Dr. Rojas, who treated Plaintiff for myasthenia gravis between November 2014 and April 2016 after Plaintiff asked for a second opinion (Tr. 178, 955-56, 960, 962, 964-66, 968-69, 972). Dr. Rojas consistently found that she responded remarkably well to low-dose prednisone and remained generally stable even during a period in which she tapered off the medication due to unsubstantiated fears of side effects, before resuming it (Tr. 960, 962, 964-66, 968-69, 972). It is proper for the ALJ to consider the claimant's improvement with treatment. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013). In sum, though not part of the record before the ALJ, Dr. Anand's treatment notes plainly buttress the ALJ's assignment of great weight to his July 2014 opinion that Plaintiff could perform light to moderate work, which she reasonably accounted for in the RFC by limiting her to a range of light work as defined in 20 C.F.R. § 404.1567(b) with additional balancing, visual, and mental limitations (Tr. 61, 64-65, 562).

(Dkt. No. 19-1 at 18.)

Although this case presents somewhat of a close call, plaintiff has the better argument. The Commissioner, through the Appeals Council or otherwise, has the ability to review or to reopen a claim based on new and material evidence. *See* 42 U.S.C. § 405(g); 20 C.F.R §§ 404.970(a)(5), 404.988(b), 404.989(a)(1). "The Social Security Act provides that a court may order the Secretary to

consider additional evidence, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. Thus, an appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks and citations omitted). The first and third criteria can be explained through the *pro se* status that plaintiff had at the time of the ALJ's determination. Plaintiff has sufficiently demonstrated that she could not obtain the records in question on her own; upon retention of counsel, the records were obtained without further difficulty. *Cf. Jones v. Sullivan*, 949 F.2d 57, 61 (2d Cir. 1991) (remand to examine new evidence where "it is apparent that Jones was relying on the ALJ to secure the necessary information from her treating physicians"); *Flanders v. Chater*, No. 93 CIV. 5671(SAS), 1995 WL 608287, at *8 (S.D.N.Y. Oct. 17, 1995) (remand to consider new evidence where communications at the hearing "indicated to Ms. Flanders that the ALJ would arrange to get updated reports from her doctors to fill in the gaps left by the insufficient medical reports of the year prior to the hearing. He did not do this."). Plaintiff has acknowledged that some of the records are duplicative, but some of the records do cover treatment providers or time periods outside of what the ALJ saw at the time of her decision. *See Pollard v. Halter*, 377 F.3d 183, 194 (2d Cir. 2004) (remand required where new evidence "may identify additional impairments which could reasonably be presumed to have been present") (internal quotation marks and citation omitted); *see also Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985) ("Here a treating physician has

for the first time diagnosed a neurological cause of Tolany's serious condition, which had previously been assessed and treated only as a urological impairment. Her condition must now be assessed in relation to the neurological impairments listed in Appendix 1, §§ 11.00–11.19.").

The records also are material—which is to say, the Court does not have to decide that the new records *will* change the previous determination; it has decided only that the records are relevant and probative. The ALJ gave great weight to a state disability form from Dr. Anand that contains little information and refers to a functional capacity assessment report that does not appear to be attached. [565–69.] Dr. Anand signed the form in 2014. A few months after the ALJ decision in 2017 and nearly a year before the Appeals Council action in 2018, a physical therapist—treated differently under the rules but still to be considered—filled out a more detailed residual functional capacity questionnaire that suggests greater limits. [27–30.] *Cf. Sixberry v. Colvin*, No. 7:12-CV-1231 GTS, 2013 WL 5310209, at *8 (N.D.N.Y. Sept. 20, 2013) ("[A] physical therapist is an 'other source' whose opinion the ALJ may consider regarding the severity of a claimant's impairment and how it affects the claimant's ability to work.") (citations omitted). Plaintiff's ophthalmologist completed a residual functional capacity questionnaire on August 28, 2017. [31–33.] The questionnaire provided more information about a condition known to the ALJ at the time of her determination. *Cf. Snider v. Comm'r*, 328 F. Supp. 2d 703, 710 (E.D. Mich. 2004) (remand required where a new "report constitutes the first objective evidence that documents a closed head injury that includes cognitive deficits. It diagnoses dementia and confirms impairments in areas not previously discussed by the treating doctors, namely problems with concentration, attention, abstract reasoning, visual and motor ability, and verbal memory."); *Pickard v. Comm'r*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (remand required where new "evidence is arguably probative of Pickard's condition during the relevant time period"). On June 30, 2017, plaintiff's ophthalmologist examined her and noted that

7

she "has not been using prednisolone, because she never ended up getting it." [41.] The comment about not obtaining medication suggests that the Commissioner might have to rule out an inability to obtain prescribed medication, an issue that would not be held against plaintiff. *See* SSR 16-3p, 2016 WL 1020935, 81 FR 14166-01, at *14170 ("When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following . . . An individual may not be able to afford treatment and may not have access to free or low-cost medical services."). "It would fly in the face of the plain purposes of the Social Security Act to deny claimant benefits because he is too poor to obtain additional treatment that had proved unhelpful." *Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000); *accord Burger v. Astrue*, 282 Fed. App'x 883, 884 (2d Cir. 2008) (summary order) ("In this case, however, Burger offered an explanation for her decision to seek only occasional emergency treatment: she was uninsured and could not pay for regular medical care."). The Court notes two other pieces of information from the new records. On August 17, 2017, Dr. Anand saw plaintiff and noted that "she's doing reasonably well." [46.] Just a few days later, on August 22, 2017, plaintiff was in the emergency room for a variety of symptoms including urinary symptoms and abdominal discomfort. [49.] The symptoms might have nothing to do with the severe impairments that the ALJ found, but neither the ALJ nor any medical professional has said so definitively. Plaintiff's new information may or may not ultimately alter the ALJ's determination, and the Court takes no position on whether it should. For now, the Court only is deciding that the potential for an impact requires taking the new information into account. Taking the new information into account is particularly important given the non-adversarial nature of disability proceedings. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel.") (citations omitted).

## III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 19). The Court grants plaintiff's cross-motion (Dkt. No. 12) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: November 6, 2019